UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

ERICA L. WHITE,

        Debtor.

Case No. 25-01516-swd
Hon. Scott W. Dales
Chapter 7

_____/

TAMMY J. JACOBI,

        Plaintiff,

v.

ERICA WHITE,

        Defendant.

Adversary Pro. No. 25-80046

_____/

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                    Chief United States Bankruptcy Judge

I. INTRODUCTION

Erica L. White ("Erica" or the "Defendant") filed her chapter 7 bankruptcy petition on May 27, 2025, and shortly thereafter, Tammy J. Jacobi (the "Plaintiff") commenced this adversary proceeding to except from discharge various debts arising from her investment in White Knight Consulting, LLC ("White Knight").

The Plaintiff filed her Amended Complaint on March 13, 2026 (ECF No. 17, the "Amended Complaint"), which prompted the Defendant to file her Motion to Dismiss Adversary Proceeding (ECF No. 25, the "Motion"). The Plaintiff responded on April 27, 2026 (ECF No. 30, the "Response"). After determining that the Defendant's references to her bankruptcy schedules

would not require the court to treat the Motion as one for summary judgment under Rule 12(d),[1] the court heard oral argument on June 4, 2026, in Kalamazoo, Michigan.

At oral argument, the Plaintiff commendably narrowed the issues for decision by foregoing reliance on the fiduciary defalcation and "willful and malicious injury" provisions of 11 U.S.C. § 523(a)(4) and (a)(6).

For the following reasons, the court will grant the Motion in part (as to the Plaintiff's claims asserted on behalf of White Knight) and deny it in all other respects.

## II. FACTUAL BACKGROUND

In early 2021, the Plaintiff discussed with the Defendant's husband, non-party Aaron White ("Aaron"), the possibility of investing $50,000.00 into White Knight in exchange for 10 percent of the company. Amended Complaint at ¶ 12. In April 2021, Plaintiff agreed to invest in White Knight and delivered a cashier's check for $50,000.00 payable to Aaron personally (at his request) to obtain a 10 percent membership interest in the company. *Id.* at ¶ 13. Additionally, the Plaintiff signed a consulting agreement with White Knight under which she would assist in the development and marketing of marijuana products at its dispensary. ECF No. 24. Aaron represented that he would deposit the $50,000.00 into White Knight's bank account, but he never did. Instead, he deposited the money into the bank account of a related company, GLAC Processing Management, LLC ("GLAC"), and allegedly funneled portions of the Plaintiff's $50,000.00 investment directly or indirectly to Erica, which she received and retained for her personal use. Amended Complaint at ¶¶ 15-17; *see also* ECF No. 19. The Amended Complaint alleges "upon information and belief" that "Erica knew, or at a minimum recklessly disregarded, that these transfers into accounts she

---

[1] In the text of this opinion, references to any "Rule" are to the Federal Rules of Civil Procedure, and to any "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure. References to the "Bankruptcy Code" or to specific statutory sections are to 11 U.S.C. §§ 101-1532, unless otherwise specified.

owned or controlled were investor funds solicited by Aaron for investment in White Knight, including Jacobi's $50,000, and not her personal funds, yet she retained and used them for personal and household purposes" and therefore "knowingly participated in, and benefited from, the scheme…" Amended Complaint at ¶¶ 17 ("knew" or "recklessly disregarded") & 24 ("knowingly participated in … the scheme"). Fairly read, the Amended Complaint alleges that the Defendant and Aaron worked together to dupe the Plaintiff into giving them $50,000.00 through a fraudulent scheme in which both knowingly played a role.

In addition, the Plaintiff's allegations also contemplate a larger – and distinct but related – fraud scheme. Plaintiff contends that the Defendant misappropriated funds belonging to White Knight through an ongoing automatic teller machine ("ATM") scam. As a part of the scheme, the Defendant allegedly used money from White Knight's cash registers to replenish ATMs that her related entity, Erica E. White Holdings, LLC, owned and she never returned the stolen funds to White Knight. *Id.* at ¶ 20.[2] The Plaintiff contends that, as a part owner of White Knight, she has derivative standing to bring claims for the ATM-related losses on behalf of the company. *Id.* at ¶ 21.[3]

After these events soured the parties' relationship, the Plaintiff and others filed a complaint against the Defendant (and others) in Michigan's Van Buren County Circuit Court (Case No. 24-074097-CB, the "State Court Action") involving the allegations included in this adversary proceeding as well as claims for breach of contract, member oppression, and breach of fiduciary

---

[2] Ms. White does not have an ownership interest in White Knight or GLAC, but owns 100% of Erica E. White Holdings, LLC. *See* Case No. 25-01516-swd, Voluntary Petition (ECF No. 1 at ¶ 19); *see also* Order dated April 15, 2026 (ECF No. 29).

[3] At oral argument, the court asked Plaintiff's counsel to explain the seeming inconsistency in his client's seeking to rescind her investment (by demanding return of her investment) while enjoying the benefits of that same investment (by asserting derivative standing). The court's decision to deny derivative standing (*see infra* at p. 10) eliminates one of the remedies and therefore the issue.

duty.[4] The automatic stay in this case (and in Aaron's separate bankruptcy case in Florida) put the brakes on the State Court Action, causing the Plaintiff to refocus her allegations through the non-dischargeable debt lens in Erica's bankruptcy case.

### III. LEGAL STANDARD

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Doe v. Miami University*, 882 F.3d 579, 588 (6th Cir. 2018). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences" in support of the relief requested. *Iqbal*, 556 U.S. at 678; *Miami University*, 882 F.3d at 588. The Sixth Circuit has explained that while the federal pleading rules do not require probability, allegations "merely consistent with" liability will not survive a dismissal motion. *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011).

Additionally, the Plaintiff's fraud allegations trigger the heightened pleading standard of Rule 9(b) (made applicable to this proceeding through Bankruptcy Rule 7009). To meet Rule 9(b)'s heightened standard, "a plaintiff must generally (1) specify the time, place, and content of the alleged misrepresentation; (2) identify the fraudulent scheme and the fraudulent intent of the defendant; and (3) describe the injury resulting from the fraud." *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 358 (6th Cir. 2014). The rule provides, however, that *general* allegations of intent and "other conditions of a person's mind" will suffice at the pleading stage. Fed. R. Civ. P. 9(b).

---

[4] While the Plaintiff may have other claims in the State Court Action, they form no part of this proceeding.

IV. ANALYSIS

The Defendant, both in the Motion and at oral argument, makes three points: (1) that the Plaintiff insufficiently pleaded claims of fraud by failing to allege that the Defendant made any direct misrepresentation to the Plaintiff (and by relying exclusively on Aaron's supposed misrepresentations); (2) the allegations regarding the Defendant's direct involvement "on information and belief" may be consistent with fraud, but do not plausibly allege it with particularity; and (3) the Plaintiff cannot assert claims on behalf of White Knight because she does not have derivative standing under applicable, substantive, non-bankruptcy law.  While the court rejects the Defendant's argument regarding the Plaintiff's own fraud claims, it finds compelling the argument against her derivative standing.

a. *Plaintiff's Claims Under § 523(a)(2)(A)*

First, the Defendant seeks dismissal under § 523(a)(2)(A) because the Plaintiff did not identify a misrepresentation from the Defendant to the Plaintiff.  The Defendant's argument, however, underplays the Supreme Court's ruling in *Husky International Electronics v. Ritz*, 578 U.S. 355 (2016), which teaches that "actual fraud" encompasses larger schemes of fraud not involving false representations.  *See Id.* at 359 ("The term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation.").  Nevertheless, as Judge Khorrami recently observed, *Husky* still requires that the debtor act with the intent to defraud.  *Dottore v. Scheibel (In re Scheibal),* Case No. 24-55161,  2026 WL 1379193, at *6 (Bankr. S.D. Ohio May 14, 2026).  The high court's decision in *Bartenwerfer v. Buckley*, 598 U.S. 69 (2023), does not alter that conclusion, absent partnership principles, agency law, or some other authority that would saddle a debtor with vicarious liability

for another's fraud.  *See generally Id.* Section 523(a)(2)(A) does not itself impose vicarious liability between spouses or anyone else.

At oral argument, Plaintiff's counsel skillfully zeroed-in on paragraph 17 of the Amended Complaint, correctly arguing that the allegations within it simply plead the Defendant's knowing or reckless receipt of the $50,000.00 investment in a manner merely "consistent with" fraud. So, under *Rondigo*, the allegation in paragraph 17 falls short of the plausibility line.  Nevertheless, the court cannot read the hedged allegations within that paragraph in isolation.[5]  Paragraph 17, coupled with the later description of the Defendant's alleged role in numerous other untoward intercompany transfers comprising the ATM "scheme," make plausible the allegations of Erica's culpability in a fraudulent scheme against the Plaintiff.  As the Plaintiff alleged in the Amended Complaint, while Aaron made the alleged misrepresentation, the Defendant nevertheless participated in a larger fraudulent scheme designed to bilk investors in the couple's various cannabis businesses.  Amended Complaint at ¶ 24.

The court reaches this conclusion *at the pleading stage of this case* by inferring that the $50,000.00 transfer was simply a distinct part of a larger scheme, even assuming (i) the Defendant made no misrepresentations directly to the Plaintiff; (ii) the Defendant may have been merely "reckless" about the source of the funds;[6] and (iii) the Plaintiff lacks standing to assert the ATM-related claims belonging to White Knight.  *See infra*, at p. 10.  Here, the Plaintiff alleges that the Defendant played a role in a larger fraudulent scheme involving the deceitful funneling of funds

---

[5] Allegations on "information and belief" raise a red flag in this court, and while lawyers may take some comfort in the coverage of certain posterior regions that pleading in this matter seems to provide, Bankruptcy Rule 9011's strictures apply even to allegations "on information and belief."  The court assumes that Plaintiff's counsel, a long-serving member of the bar, honored his obligations under the rule in filing the Amended Complaint.

[6] It stands to reason that if § 523(a)(2)(A) excepts from discharge a debt arising from recklessness as to the truth of the representation, *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998), then the recklessness alleged in paragraph 17 as to Ericka's deceitful receipt of funds as part of the scheme sufficiently alleges the discharge-disqualifying scienter, especially juxtaposed with the *modus operandi* that the ATM-related allegations suggest with respect to her separate but similar wrongdoing.

from White Knight and other entities directly or indirectly (for example through her ATM scheme) to herself.  As Judge Boyd put it a few years ago, the allegations paint "a picture" of a fraudulent scheme of which the Defendant was a part and from which her discharge may not save her. *Michigan Unemployment Insurance Agency v. Heinisch (In re Heinisch)*, 600 B.R. 393, 402 (Bankr. W.D. Mich. 2019) ("A debtor's fraudulent intent may be inferred when the totality of the circumstances surrounding a given transaction presents a picture of deceptive conduct by the debtor which indicates an intent to deceive the creditor.") (internal quotations omitted).

Additionally, and similarly, the Defendant's lack of ownership in White Knight or GLAC does not warrant dismissal, contrary to her counsel's suggestion.  The Defendant attempts to rely on the negative implications of the Supreme Court's decision in *Bartenwerfer v. Buckley*, 598 U.S. 69 (2023) and this court's decision distinguishing *Bartenwerfer* – *In re Coleman*, Adv. Pro. No. 23-80069, 2024 Bankr. LEXIS 2951 (Bankr. W.D. Mich. Dec. 9, 2024) – for the assertion that, because Aaron made the alleged misrepresentations, the Plaintiff must connect the Defendant's alleged fraud to her ownership of White Knight or GLAC.

The Defendant's cases, however, are distinguishable.  *Bartenwerfer* and *Coleman* both involve debtors that did not directly engage in the alleged fraud.  *See Bartenwerfer*, 598 U.S. at 82 (2023) ("Ordinarily, a faultless individual is responsible for another's debt only when the two have a special relationship"); *see also Coleman* at p. 7 ("In other words, the state court imputed the husband's fraudulent intent to the wife [in *Bartenwerfer*] because the two had formed a legal partnership.") (internal quotations omitted).  *Bartenwerfer* imposed vicarious liability under applicable non-bankruptcy law; *Coleman*, in contrast, found no such law applicable.

The Amended Complaint, however, *directly accuses* the Defendant of taking part in the wider fraudulent scheme.  Taking the Plaintiff's allegations as true, and drawing reasonable

inferences, the Defendant was directly involved in the fraudulent retention of the Plaintiff's $50,000.00 investment and syphoning money from (or using) White Knight. While the Plaintiff's ultimate success will require her to prove her allegations, her pleading suffices at this stage of the case.

Finally, the court finds that the Plaintiff has met the particularity requirement under Rule 9(b). The Amended Complaint and its exhibits satisfactorily describe the time, place, and manner of the Defendant's alleged fraudulent activity in compliance with the heighted pleading standard. The allegations sufficiently put the Defendant on notice of the Plaintiff's claim, considering the details regarding Erica's and Aaron's funneling investor money (including Plaintiff's investment) out of their cannabis enterprise and into their own pockets. In short, this alleged fraudulent scheme, if proven, would establish "actual fraud" under § 523(a)(2)(A), and therefore the Amended Complaint survives the Motion.

b. *Plaintiff's Claims Under § 523(a)(4)*

Despite the Defendant's challenge to Plaintiff's claims under § 523(a)(4),[7] the court finds that the Amended Complaint states a claim for embezzlement, largely for the same reasons involving the overlapping claims under § 523(a)(2)(A). Indeed, as a practical matter, the court struggles at times to distinguish claims under § 523(a)(2)(A) from claims for embezzlement under § 523(a)(4). Both target fraudulent schemes, with the former addressing generic fraud and the latter capturing a narrower subspecies of fraud. Both involve a debtor's discharge-limiting deceit. In the present case, at least, the distinction strikes the court as largely academic, as it is difficult to conceive of the Plaintiff's proving one without the other.

---

[7] As previously noted, the Plaintiff no longer asserts a fiduciary defalcation theory.

In the Amended Complaint, the Plaintiff does not contend that she directly entrusted the Defendant with her $50,000.00 investment.  Instead, the Plaintiff describes Erica's trickery in receiving funds that the Plaintiff had entrusted to Aaron for a specific purpose – the investment into White Knight – and Erica retained them for personal use, knowingly or recklessly disregarding the Plaintiff's interests under circumstances suggesting deceit.

Under § 523(a)(4), the creditor need not entrust funds to the debtor exclusively to constitute embezzlement.   As the Sixth Circuit Court of Appeals explains, embezzlement includes "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Brady*, 101 F.3d 1165, 1172–73 (6th Cir. 1996) (internal quotation marks and citations omitted); *see also Long v. Piercy (In re Piercy)*, 21 F.4th 909, 919 (6th Cir. 2021) ("Notably, embezzlement or larceny under the second prong of § 523(a)(4) requires demonstrating a debtor's fraudulent intent…").  The allegations permit the court to infer (at this stage of the proceedings) that even if Erica lawfully came into possession of the $50,000.00 investment through Aaron and GLAC, it is certainly plausible to infer fraudulent intent. If Erica's appropriation were unlawful, we would call it larcenous, but in any case, the circumstances suggest fraud.  The court finds that the Plaintiff sufficiently pled embezzlement or larceny by describing the Defendant's fraudulent retention of the $50,000.00 White Knight investment.  *See Piercy*, 21 F.4th at 919 (noting that the only difference between embezzlement and larceny is the way the debtor obtains the property).   A plaintiff may plead in the alternative, and the court need not choose between embezzlement or larceny at this point.  Fed. R. Civ. P. 8(a)(3).

To the extent the Motion seeks dismissal of the count under § 523(a)(4), the court will deny it.

c. *Derivative Standing to Assert White Knight's Claims*

During oral argument the court and the parties extensively discussed whether the Plaintiff may recover for injuries the Defendant allegedly inflicted on White Knight, generally by perpetrating the purportedly vampiric ATM scheme through which Aaron and Erica siphoned cash out of White Knight.  Although the court finds the allegations relating to the ATM scheme have a bearing on the Plaintiff's direct claims (as part of the totality of the circumstances or *modus operandi*), the Defendant correctly argues that Plaintiff cannot assert derivative claims on behalf of White Knight.  The Motion properly points out, without contradiction, that the Plaintiff never made a written demand on the managers or members of White Knight before asserting derivative standing, as the Michigan Limited Liability Company Act requires. *See* M.C.L. § 450.4510 ("[a] member may commence and maintain a civil suit in the right of a limited liability company if…[t]he plaintiff has made written demand on the managers or the members with the authority requesting that the managers or members cause the limited liability company to take suitable action.").

In response, the Plaintiff argues that, because Aaron managed or controlled White Knight, any demand, in writing or otherwise, would have been futile.  Futility, however, is no defense to the statute's requirement according to the Michigan Court of Appeals*. See Alliance Associates, L.C. v. Alliance Shippers, Inc.*, Case No. 05-507573-CK, 2006 WL 1506687 at *3 (Mich. App. Jun. 1, 2006) ("[M.C.L. § 450.4510] does not provide for an exception for futility."). Moreover, the court predicts that the written demand requirement is a matter of state substantive law, not procedure, based on the Michigan Court of Appeals construction of an analogous provision under the state's Business Corporation Law. *Cf. Karmanos v. Bedi*, Case No. 15-014148-CB, 2018 WL 6252038 at *5 (Mich. App. Nov. 29, 2018) (finding that the Michigan Business Corporation Act's

written demand requirement for derivative suits is a matter of substantive law controlled by the language of the statute). Therefore, the court will dismiss the Plaintiff's claims pertaining to her derivative standing as a part of White Knight.

It bears repeating: in dismissing the derivative claims the court is saying only that the Plaintiff may not recover from the Defendant for injuries she may have caused White Knight through the alleged ATM scheme. If, however, evidence related to the ATM scheme is relevant to the Plaintiff's claims under § 523(a)(2)(A) and (a)(4), and is proportional and not privileged, she may seek discovery and admission without prejudice to any objection the Defendant may assert under the rules of civil procedure or evidence.

Therefore, the court will limit the Plaintiff's recovery in this proceeding to her initial investment in White Knight, provided she proves Erica's fraud in obtaining the funds. Recovery of the nearly two million dollars that Erica and Aaron allegedly washed through White Knight's ATM, however, is a matter for another tribunal.

NOW, THEREFORE, IT IS HEREBY ORDERED the Motion is (i) GRANTED with respect to the Plaintiff's derivative claims on behalf of White Knight (and those claims are DISMISSED); and (ii) DENIED in all other respects.

IT IS FURTHER ORDERED that the Clerk shall schedule a Rule 16 conference to take place in Kalamazoo soon, but at a time convenient to the court and the parties.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Bankruptcy Rule 9022 and LBR 5005-4 upon R. Todd Redmond, Esq., Nicholas Scott Laue, Esq., and Sarah Ann LaSata, Esq.

**IT IS SO ORDERED.**

**Dated June 9, 2026**



_____
Scott W. Dales
United States Bankruptcy Judge